UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. HAMMONS, as Next Friend of
JACK M. HAMMONS, a minor,

    Plaintiff,                                         Case No. 06-cv-14509

v.                                                   Hon. Gerald E. Rosen

ICON HEALTH AND FITNESS d/b/a
PRO-FORM,

    Defendant.
_____/

**OPINION AND ORDER REGARDING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 23, 2009

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

### I. INTRODUCTION

Plaintiff Mark W. Hammons, as next friend for his minor son Jack M. Hammons, brought this suit in a Michigan court, on September 7, 2006, asserting state law product liability, breach of warranty, and negligence claims against Defendant ICON Health and Fitness d/b/a Pro-Form. Plaintiff's claims arise from an incident in which Jack sustained severe and permanent injuries to his left hand after it became lodged between a thin plastic guard and the rear end component of a treadmill, designed and manufactured by

the Defendant.  The case was removed to this court on October 13, 2006, on the basis of diversity of citizenship.  Michigan law governs this product liability action.

By motion filed on July 31, 2007, Defendant now seeks summary judgment in its favor.  Only after this Court ordered Plaintiff to file a response in opposition to Defendant's summary judgment motion, did Plaintiff do so on December 12, 2007.  Plaintiff's response largely summarized the deposition testimony of his expert witness, which was provided long after the discovery deadline and over a month after Defendant filed its Motion for Summary Judgment.  On January 11, 2008, Defendant filed a reply in further support of its motion, arguing that Plaintiff's sole expert testimony is insufficient to sustain Plaintiff's claims.[1]

Having reviewed the parties' briefs in support of and opposition to Defendant's motion, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendant's motion "on the briefs."  See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on this motion.

## II. **FACTUAL BACKGROUND**

---

[1] Defendant does not argue that the proposed testimony of Plaintiff's expert should be excluded for failing to meet the standards set forth in Fed. R. Evid. 702.  Rather, the company argues that even with the testimony, Plaintiff will remain unable as a matter of law to establish each of the requisite elements of his product liability claims.

Mark W. Hammons ("Plaintiff") is the father of Jack M. Hammons ("Jack"), a minor, who resides in Macomb County, Michigan.  In 1996, Plaintiff purchased the subject treadmill from a Sears department store.  The treadmill, known as the Pro-Form 580si Treadmill, is designed, manufactured and/or marketed by Defendant ICON Health and Fitness, a Delaware corporation headquartered in Utah.  Plaintiff assembled the treadmill in his home.  Both Plaintiff and his wife, Michele, used the treadmill, primarily for jogging and walking.  At the time of the purchase, and throughout the course of the ownership, the treadmill appeared to be in proper working order.  An owner's manual was included in the packaging.  However, neither Plaintiff nor his wife read the manual in its entirety.

Jack was born on September 17, 2001.  Plaintiff testified that both he and his wife consistently warned Jack against going near the treadmill and told him that it was dangerous.  At first, the treadmill was kept in the basement, but after Michele gave birth to the couple's second son, Nick, the treadmill was moved to the master bedroom.

On August 15, 2005, approximately one month before his fourth birthday, Jack was in the master bedroom watching television, while his parents got ready for work.  Plaintiff's 69-year old mother, Esther, arrived at the home to baby-sit Jack at approximately 8:00 AM.  Both Plaintiff and Michele left for work.  Jack asked Esther if he could continue watching television in the bedroom and she agreed.  She then left Jack in the bedroom and a few minutes later heard a scream.  She ran into the bedroom and found Jack standing at the foot of the treadmill with his hand behind him, screaming.  The

treadmill was going full speed and Esther immediately turned it off. She noticed that Jack had a burn taking up a large portion of the back of his left hand.

Jack later informed his parents that he had managed to start the treadmill by pressing buttons on the console. He was thrown backwards, where his left hand was caught between the rear plastic guard ("the rear hood") and the movable tread of the treadmill.

After receiving emergency medical attention and being taken to the hospital, Jack was diagnosed with a third-degree burn, described as a degloving abrasion. As a result of the injury, he required skin graft surgery, stitches, and the wearing of a compression glove. Jack underwent physical therapy and continued to wear the compression glove, 24 hours a day, seven days a week, for at least twelve months.

Plaintiff subsequently filed this product liability action against Defendant, asserting claims of negligent design, negligent manufacturing, failure to warn, and breach of warranties. Plaintiff supports his theories with expert testimony, Douglas R. Morita, an engineer who, in his deposition, presented his understanding of the sequence of events leading to the injury. Morita further opined that if the rear hood were absent or manufactured from a more rigid material, the injury would not have occurred. He stated that the gap between the rear hood and the moving tread is not obvious from all angles. Finally, Morita testified that he was unaware of other models of treadmills that feature a rear hood or trim like the rear hood at issue here. He concluded that removing the rear hood would not compromise the utility of the product, nor would it cost extra money,

since it would involve an overall reduction in parts.

### III.  ANALYSIS

**A.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  Celotex, 477 U.S. at 323.  To refute such a showing, the non-moving party must set forth specific facts sufficient to show that a reasonable fact-finder could return a verdict in his favor.  Sanders v. Freeman, 221 F.3d 846, 851 (6th Cir. 2000).  To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue.  Matsushita, 475 U.S. at 586-87; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

The Court will apply the foregoing standards in deciding Defendant's Motion for

Summary Judgment.

B.     **Plaintiff Has Failed to Produce Evidence of Defective Design.**[2]

Under Michigan law, "[a] manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury." Prentis v. Yale Mfg. Co., 421 Mich. 670, 692, 365 N.W.2d 176, 186 (1984); see also Gawenda v. Werner Co., 932 F. Supp. 183, 187 (E.D. Mich. 1996), aff'd, 127 F.3d 1102 (6th Cir. 1997). Michigan courts have "accepted the social policy rationale that those injured by defective products should be compensated for their injuries . . ., [but] they have never gone so far as to make sellers insurers of their products and thus absolutely liable for any and all injuries sustained from the use of those products." Prentis, 365 N.W.2d at 181. Thus, a manufacturer's duty in designing products extends only to avoiding "unreasonable" risks. See id; Owens v. Allis-Chalmers Corp., 414 Mich. 413, 432, 326 N.W.2d 372, 379 (1982) ("Manufacturers are not insurers that 'in every instance and under all circumstances no injury will result from the use' of their products.").

Plaintiff alleges that the treadmill, as designed, was unreasonably dangerous to minors because Jack was able to start the machine, and because the rear hood was either too flimsy or should not have existed at all given its potential risk as an "entrapment

---

[2] In his Complaint, Plaintiff alleges that Defendant "failed to design, manufacture and/or market a product that was safe for use *in or around the vicinity of minors*," (Compl. ¶ 9(f)) (emphasis added), but cites no legal authority for this particularized type of duty. Accordingly, the Court evaluates Plaintiff's claims as a claim of design defect and, separately, as a claim of manufacturing defect, addressed in the following two sections.

6

point." Plaintiff's relies solely on Morita's deposition testimony to establish a prima face case of design defect. Because Plaintiff has not presented sufficient evidence of the magnitude of the alleged risk, this Court concludes that Plaintiff has not established a prima facie case of design defect.

Michigan courts apply a risk-utility analysis to determine whether a plaintiff has made out a case for product liability based upon a claimed design defect. This test is applied without regard for whether the plaintiff is proceeding under a negligence or breach-of-warranty theory. Prentis, 365 N.W.2d at 185-87; see also Gregory v. Cincinnati Inc., 450 Mich. 1, 538 N.W.2d 325, 329 (1995); Berry v. Crown Equipment Corp., 108 F. Supp. 2d 743, 756-57 (E.D. Mich. 2000). The seminal Michigan case on this analysis, Owens v. Allis-Chalmers Corp., states that a prima facie case for a design defect claim requires "data or other factual evidence concerning" both the magnitude of the risks involved and the reasonableness of any proposed alternative design. 326 N.W.2d at 379.

In the context of the first "magnitude of risk" prong, where the specific frequency of similar accidents is unknown, a plaintiff bears a particularly "heavy burden" in proving that the defendant's chosen design was unreasonably dangerous. Owens, 326 N.W.2d at 379. This burden must be met with evidence beyond an expert's speculation: "If a plaintiff may proceed with merely the opinion of an 'expert witness' retained specifically for that purpose, whose unsupported testimony is construed to create an 'issue of material fact' to avoid summary judgment under Fed. R. Civ. Proc. 56(c), it is difficult to conceive

7

of any product liability case that could not proceed to trial." Zettle v. Handy Mfg. Corp., 998 F.2d 358, 361-62 (6th Cir. 1993). For example, in Peck v. Bridgeport Machines, Inc., 237 F.3d 614, 617-18 (6th Cir. 2001), the Sixth Circuit evaluated a product liability claim brought by a worker who was injured while using a lathe that was inadvertently activated and severely injured one of its users. Peck, 237 F.3d at 618. The plaintiff's expert "testified that he had never heard of similar accidents occurring with lathes and did not know the probability of a similar accident happening." Id. This testimony without more, the court concluded, was insufficient to satisfy the magnitude of risk prong of the risk-utility analysis under Michigan law. Id.

In this case, Plaintiff has offered no data or factual evidence of similar incidents, and little more than his expert's conclusions as to whether the severity of the injury or the likelihood of its occurrence was foreseeable by the manufacturer at the time of the distribution of the product. Plaintiff's expert, Morita, stated that he is "personally unaware of any other accidents where someone had been entrapped in between that trim piece and the metal guard and was injured by the belt." (Morita Dep. 86:14-17, Sept. 14, 2007.) Morita admitted that past treadmill cases in which he testified involved only injuries suffered when people were thrown off a treadmill, because the products at issue either inadvertently started or inadvertently sped up. He nevertheless concluded that Jack's injury in this incident was "foreseeable." (Morita Dep. 86:21-24.)

> Basically I believe it's been known time immemorial . . . how people will fall or be caused to fall on a treadmill and be carried along with the belt. I mean, that's the main purpose for the cord, the key switch. Most companies

> call them . . . emergency switches or emergency stop switches.  But that is in fact the starting action for the accident sequence, . . . falling, being carried along the belt, entirely foreseeable.  Then if you look at, you know, what occurs as you are being carried along, then it's my opinion that . . . you do identify a hazard [and] that it is foreseeable that someone would get caught.  Just because they know or should have know [sic] how easy it is to move that trim piece away from the guard.

(Morita Dep. 105:6-20.)  Based on an examination of photographs of the subject treadmill,[3] and on his knowledge of other treadmill models, Morita concluded that Defendant created a hazard, by including the rear hood, and failed to protect against any possible entrapment risks the hood posed, by using an inappropriate material.

In the absence of evidence of past similar incidents, Morita's testimony alone does not meet the heightened burden set out in Owens.  While Morita identified the flexibility of the rear hood material, the size of the gap and the likely trajectory of Jack's body and hands as he moved backward on the tread, these taken together do not establish the magnitude of the risk.  Rather, it explains how the events in this particular case likely occurred.  Morita's testimony acknowledges that Defendant's design accounts for the foreseeable risk of inadvertent starts,[4] but it does not provide data or factual evidence of the foreseeability of children starting the machine in spite of the safety mechanisms and

---

[3] One such photograph showed an adult hand pulling up on the plastic trim of the rear hood.  Morita testified that this was indication of how easily it could become a entrapment point.

[4] Laurel Jensen, Director of Product Safety at ICON Health and Fitness, testified that the subject treadmill featured numerous built-in safety mechanisms, including: an "on/off" switch on the base of the unit, the requirement to insert a "key" prior to use, and the need to re-set the unit prior to each use.

warnings. Even Plaintiff and his wife acknowledged that the accident, as it occurred, was entirely unforeseeable given all the safety mechanisms and warnings included with the product. (Ex. A p. 23-25; Ex. B p. 86.) Nothing further in the record establishes the likelihood of the particular injury posed by the design, and nothing beyond Morita's conclusory statements after only a review of photographs supports the allegation that Defendant knew or should have known of this particular entrapment risk.

Finally, Michigan courts have held that statistical or factual deficiencies do not prevent the plaintiff from making a prima facie case of designs defect, where there is testimony that the product is *in general* unsafe and that an alternative design would have prevented the plaintiff's accidents. See Reeves v. Cincinnati, Inc., 176 Mich. App. 181, 189-90, 439 N.W.2d 326, 330 (1989). In Reeves, the court evaluated the sufficiency of evidence in a products liability case involving a power press. The court recognized that even though the parties lacked "a statistical breakdown of the risks of injuries caused by presses with and without" the proposed safety mechanism, there was considerable evidence that power presses in general were prone to this type of malfunction. Reeves, 439 N.W.2d 330. Accordingly, the court held that, in light of this body of evidence, any statistical deficiencies in the expert testimony did not prevent plaintiffs from making a prima facie case. In this case, Plaintiff has not provided anything approaching the type of body of evidence found sufficient in Reeves, to suggest that treadmills with a rear hood are commonly known to be unsafe or prone to this type of injury.

Although Plaintiff presented evidence of reasonable alternative designs, the

second prong of the risk-utility analysis, the Court finds that he has failed to establish a prima facie case of design defect because he has not shown that the treadmill, as designed, presents an unreasonable magnitude of risk. Defendant is thus entitled to summary judgment on the design defect claim.

## C.  Plaintiff Has Failed to Produce Evidence of Manufacturing Defect.

A manufacturer has a duty to manufacture a product to eliminate unreasonable risks of foreseeable injury. See Fabbrini Family Foods, Inc. v. United Canning Corp., 90 Mich. App. 80, 93, 280 N.W. 2d 877, 883 (1979). In order for Plaintiff to establish a manufacturing defect, it must show that 1) the product was defectively manufactured, 2) the product reached the plaintiff in the same condition as it was when it left the manufacturer and 3) the defect was the proximate cause of the person's injuries or damages. See Allstate Ins. Co. v. Icon Health & Fitness, Inc., 361 F. Supp. 2d 673, 677 (E.D. Mich. 2005) (citing Prentis, 365 N.W.2d 176). Plaintiff need not identify the specific nature or cause of this alleged defect, nor is he compelled to produce expert testimony in support of his claim. See Holloway v. General Motors Corp., 403 Mich. 614, 271 N.W.2d 777, 783-84 (1978). The product must "be evaluated against the manufacturer's own production standards, as manifested by the manufacturer's other like products." Prentis, 365 N.W.2d at 182.

The record lacks sufficient evidence from which a trier of fact could conclude that the subject treadmill was defective at the time it left Defendant's control. In addition to Plaintiff and Plaintiff's wife's testimony that the treadmill functioned properly from the

time of its purchase in 1996, Defendant's expert, Jensen, inspected the subject treadmill on January 11, 2007, and found that it was in proper mechanical and electrical order and met with ICON design and manufacturing specifications. (Def. Mot. for Summ. J. Ex. J.) Plaintiff's expert did not inspect the subject unit or an exemplar, and acknowledged that he is not familiar with the Defendant's production standards, other than the answers to interrogatories provided to Plaintiff. Notably, Plaintiff all but drops this claim in his response to Defendant's Motion for Summary Judgment.

There is no evidence in the record to support the contention that the rear hood was defective when "evaluated against the manufacter's own production standards." Prentis, 365 N.W.2d at 182. Nor is there evidence from which Plaintiff could satisfy his burden to show that "a practical and technically feasible alternative production practice was aviable that would have prevented the harm without significantly imparing the usefulness or desirability of the product to users and without creating equal or greater harm to others." Mich. Comp. Laws § 600.2946(2). Finally, Jensen testified that the treadmill went through intensive testing, auditing, and reviews before it was placed on the market.

A trier of fact could not permissibly conclude that the treadmill was not "reasonably fit for its intended or foreseeable use" at the time it left Defendant's control. Consequently, Defendant is entitled to summary judgment in its favor on Plaintiff's manufacturing defect claim.

**D.      Plaintiff Has Failed to Produce Evidence of a Failure to Warn.**

Under Michigan law, a manufacturer has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of the product. Portelli v. I.R. Constr. Prods. Co., 218 Mich. App. 591, 598-99, 554 N.W.2d 591, 596 (1996); see also Peck, 237 F. 3d at 618. In order to be held liable under Michigan law for a failure to warn, a plaintiff must show that the seller or manufacturer:

>  (a) had actual or constructive knowledge of the alleged danger,
>  (b) had no reason to believe that consumers would know of this danger, and
>  (c) failed to exercise reasonable care to inform consumers of the danger.

Hollister, 201 F.3d at 741. A plaintiff must also establish causation and damages. Where causation is lacking, the question of duty to warn need not be addressed. Fisher v. Kawasaki Heavy Indus., Ltd., 854 F. Supp. 467, 472 (E.D. Mich. 1994).

Plaintiff argues that Defendant did not provide any warnings specifically regarding the risks and/or hazards caused by the rear component of its product. However, because a manufacturer's duty to warn is limited to foreseeable uses of a product and attendant risks, rather than possible consequences or types of injuries, the Court concludes that Plaintiff has not established a prima facie case of failure to warn.

The scope of a manufacturer's duty to warn is not unlimited. Glittenburg v. Doughboy Recreational Indus., 491 N.W.2d 208, 212-13 (Mich. 1992). There is no duty to warn with regard to unforeseeable uses of a product. Trotter v. Hamill Mfg. Co., 372 N.W.2d 622 (Mich. 1985); see also Mich. Comp. Laws § 600.2948(3) (A manufacturer or seller cannot be held liable under a failure-to-warn theory "unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm based on the

scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer"). In addition, nothing in the Michigan statutes imposes a duty to warn of *a specific injury* that could result from a risk. Greene v. A.P. Products, Ltd., 475 Mich. 502, 715 N.W.2d 855, 860 (2006); see also Glittenburg, 491 N.W.2d at 212-13 (holding that the threshold issue is whether people, in general, are unaware of the fact that there is a risk of serious harm, not the specific type of harm). Finally, whether there is a duty to warn is a question of law for the court. Fleck v. Titan Tire Corp., 177 F. Supp. 2d 605, 616-19 (E.D. Mich. 2001).

Plaintiff has failed to make out this claim. Defendant provided numerous warnings alerting purchasers and users to the risks associated with children using, or being near, the product, as well as precautions for avoiding inadvertent injuries. The owner's manual cautions that owners should "read all precautions and instructions in the manual" before use. (Def. Mot. for Summ. J. Ex. K.) Page three of the manual lists a number of specific precautions "to reduce the risk of burns, fire, electric shock or injury to persons." (Ex. K, p. 3.) Item six on page three of the manual states: "Keep small children and pets away from the machine at all times." (Ex. K, p. 3 n. 6.) A precaution states: "Never leave the treadmill unattended while it is running. Always remove the key and move the on/off switch to the 'off' position when the treadmill is not in use." (Ex. K, p. 3 n. 18.) Lastly, the console of the machine states:

> CAUTION! TO AVOID INJURY. Read users manual first. Don't stand
> on walking belt when starting treadmill. Moving parts can cause injury; use
> caution, and keep children away. Stop if you feel faint, dizzy, or short of

breath.

(Ex. L.)

Plaintiff acknowledged in his deposition that he did not believe that any failure to warn claim existed, given his and his wife's understanding of these dangers:

> Q: Do you believe that ICON failed to warn you of any dangers associated with its product?
>
> A: No, I think they did their job in putting the warnings on the machine . . .

(Ex. A, p. 95.) Although a plaintiff's subjective awareness of a risk is not relevant to interpreting what the manufacturer knew or should have known for failure to warn claims, it is noteworthy that Plaintiff and his wife demonstrated clear knowledge that the treadmill was dangerous for children and repeatedly warned Jack to stay away from it.[5]

Taken together, the foregoing evidence indicates an admission that there was no duty to warn, beyond the warnings clearly provided.[6] In addition, the Court finds that

---

[5] Morita declined to offer any opinion as to whether there was a failure to warn.

[6] Defendant argues in the alternative that the open and obvious doctrine should apply in this case and that because the risk inherent. Michigan law states that a "defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action." Mich. Comp. Laws § 600.2948(2).

Michigan courts have narrowed the open and obvious doctrine to "simple tools or products," or products with universally known characteristics, "not . . . device[s] with parts or mechanism." Glittenburg, 491 N.W.2d at 213 (holding above-ground swimming pools are "simple tool" subject to open and obvious doctrine analysis). Generally, where reasonable minds could differ as to whether a product is a "simple tool," the analysis becomes a question of fact to be determined by a jury. Id. at 217. In this case, the Court

even if Plaintiff had presented sufficient evidence to create a genuine issue of fact as to Defendant's duty to warn, he has offered no evidence to establish causation. "[T]o establish a prima facie case that a manufacturer's breach of its duty to warn was a proximate cause of an injury sustained, a plaintiff must present evidence that the product would have been used differently had the warnings been given." Mascarenas v. Union Carbide, 196 Mich. App. 240, 251, 492 N.W.2d 512, 517 (1992). Plaintiff has made no such showing. Accordingly, Defendant is entitled to summary judgment on the failure to warn claim.

**E.     Plaintiff's Remaining Claims of Breach of Express and/or Implied Warranties Must Fail Because He Has Failed to Establish the Requisite Elements of a Design Defect Claim.**

Recovery under either a theory of negligence or breach of warranties requires proof of a defective design. Prentis, 365 N.W.2d at 186; see also Smith v. E.R. Squibb & Sons, Inc., 405 Mich. 79, 273 N.W.2d 476 (1979). "When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable. Prentis, 365 N.W.2d at 186.

Because Plaintiff has failed to make out a prima facie case for design defect, his claims of breach of express and/or implied warranties must also fail.

## IV. CONCLUSION

---

need not reach this question, where Defendant provided ample warning of possible hazard.

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dckt #23] is GRANTED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 23, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 23, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

17